IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDRA RANKIN, paternal grandmother and
guardian ad litem of T.A.W., a minor,

        Plaintiff,

  vs.                                                  No. CIV 02-996  WPJ/LFG

DEBORAH HARTZ, et al.,

        Defendants.

**FINDINGS OF FACT AND
RECOMMENDED DISPOSITION**[1]

THIS MATTER is before the Court on an application for approval of a settlement between Plaintiff Sandra Rankin as paternal grandmother and guardian ad litem of T.A.W., and Defendants Deborah Hartz *et al*. Court approval is necessary because of the presence of T.A.W., who is a minor.[2] Having heard the presentations of counsel and court-appointed guardian ad litem Angela Arellanes, along with the testimony of Plaintiff Sandra Rankin, presented at a hearing on August 19, 2003, the Court finds:

---

[1] Parties were advised of their right to file objections to this report and recommendation within ten days, pursuant to 28 U.S.C. § 636(b)(1). However, in order to expedite the approval of this settlement, counsel agreed at the August 19, 2003 hearing that they had no objections to the Court's proposed findings and recommended disposition.

[2] The general rule is that the court must give approval to a settlement when minor children are involved. The court "has a special obligation to see that [children] are properly represented, not only by their own representatives, but also by the court itself." Garcia v. Middle Rio Grande Conservancy Dist., 99 N.M. 802, 808, 664 P.2d 1000, 1006 (Ct. App. 1983), *overruled on other grounds by* Montoya v. AKAL Sec., Inc., 114 N.M. 354, 357, 838 P.2d 971, 974 (1992).

**Findings**

1. On August 12, 2002, T.A.W., and Sandra Rankin ("Rankin"), as the grandmother and guardian ad litem of T.A.W., filed a Complaint against Defendants Deborah Hartz, Marjorie Tafoya, David Pecotte, Angus MacKillop, Susan Zellhoefer and John Does (all hereinafter referred to as "Defendants").

2. Plaintiffs allege that, on or about January 23, 2002, T.A.W. was placed in a foster home where she was raped or otherwise sexually abused by another foster child. Plaintiffs claim that Defendants failed to report the rape/sexual abuse, as required by state statute, and that Defendants were aware that the other foster child was herself a victim of sexual abuse and would "act out" on T.A.W. Plaintiffs allege that Defendant Susan Zellhoefer was negligent in her duties toward T.A.W., and that the other Defendants were deliberately indifferent to T.A.W.'s welfare. They claim that T.A.W. suffered severe personal, psychological, and emotional injuries. [Complaint, Doc. 1; Initial Pretrial Report, Doc. 59].

3. On or about May 28, 2003, the parties advised the Court that they had reached a settlement of all issues in this case, subject to the Court's approval. The terms of that settlement provide for a payment by Defendant to Plaintiff and Plaintiff's counsel of $30,000. The net proceeds, after payment of taxes, health care provider claims, costs and attorney fees, will be invested for T.A.W.'s sole benefit. The funds will be in T.A.W.'s name but under the supervision and control of her paternal grandmother, Plaintiff Rankin, with the assistance of a Conservator if that is deemed necessary.

4. On August 19, 2003, the Court held a hearing on the parties' application for approval of the settlement. Counsel for Plaintiff and Defendants attended the hearing, as did Plaintiff Rankin, and

court-appointed guardian ad litem Angela Arellanes ("Arellanes").

    5. Arellanes reported that her investigation indicated that T.A.W. is living with paternal grandparents and is adjusting well at this time. There is a concern, however, that T.A.W. may have some psychological problems when she reaches puberty. Arellanes stated that the settlement amount was acceptable, and she felt it was in T.A.W.'s best interests that the case be settled, for the amount agreed to by the parties.

    6. Counsel for Plaintiffs stated that settlement was a reasonable way to handle the litigation as the out-of-pocket medical expenses were low, amounting to a few thousand dollars at most. T.A.W. is currently under the care of a psychologist, and most of her medical expenses are covered by her grandparents' insurance. Plaintiff's counsel stated that he felt the risks of proceeding to trial would outweigh the possible advantages to be gained for T.A.W., and that it was in T.A.W.'s best interest to reach a settlement.

    7. Arellanes stated that she had discussed with Rankin the fact that the settlement funds belong to T.A.W. and must be used only for her benefit, in accordance with Leyba v. Whitley, 118 N.M. 435, 882 P.2d 26 (Ct. App. 1994), *reversed on other grounds,* 120 N.M. 768, 907 P.2d 172 (1995).

    8. Rankin was sworn in and testified that she actively participated in the settlement negotiations, through her attorney. She stated that she was not under the influence of medications, alcohol, or any other substance that would affect her ability to understand the proceedings, either at the time of settlement discussions or at the time of the hearing.

    9. Rankin testified further that she understood she had no obligation to settle the case and could elect to go to trial if she so chose, and she understood that trial might result in an award greater

than that for which she and T.A.W. were settling but might also result in lower damages or even a defense verdict. Rankin understood that T.A.W.'s condition could possibly worsen in the future, but that if she agreed to the settlement, the terms of the settlement were final as to the claims raised in this lawsuit, and any other claims that could have been raised against Defendants or others arising from the incidents in question, and that there would be no opportunity to reopen this litigation to seek more money or to file new claims against Defendants.

10. Rankin testified that she understood that the proceeds of the settlement are intended for the benefit of T.A.W., and that they may not be spent for any other purpose. She has taken adequate steps to oversee management of the funds, and she will have her eldest son appointed Conservator, if that becomes necessary. She stated she is pleased with the representation she received from her attorney, and she believes the settlement is fair and reasonable. She asked the Court to approve the settlement.

11. The Court informed the parties that the settlement is contingent on the trial judge's acceptance of the Magistrate Judge's recommendation to approve the settlement. The parties each waived their right to object to the findings and recommendation of the Magistrate Judge, and waived the ten-day period for objections.

12. Arellanes' fee as guardian ad litem will amount to approximately $1,200. By agreement of the parties, that amount will be paid jointly by the parties.

13. Counsel for Defendant stated that the settlement was facilitated by the willingness of Plaintiff's attorney to absorb costs and take a reduced fee, thus providing a larger portion of the recovery that will be directly available to T.A.W. The Court commends the parties for their cooperation in this regard.

14. The parties agreed to stipulate that the injuries suffered by T.A.W. are both physical and psychological, and the Court so finds.

## Conclusion of Law

After consideration of the evidence, applicable law, testimony and presentations of counsel, the undersigned Magistrate Judge concludes that the Court has jurisdiction over the parties and subject matter, and further concludes that this settlement is in T.A.W.'s best interests, and that her paternal grandmother understands her obligations and is appropriately managing the settlement proceeds. Therefore, the Court recommends that the settlement be approved and that the case be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge